UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA :

        v.        :        22-cr-157 (RDM)

JUSTIN SMITH        :

### DEFENDANT'S MEMORANDUM IN AID OF SENTENCING

    Mr. Smith comes before this Court for sentencing having pleaded guilty to one count of parading, demonstrating or picketing in the United States Capital on January 6, 2021. Mr. Smith was one of the youngest individuals charged – he was only 20 years old at the time. He rode a bus filled with older individuals who came to the District to attend the rally to support then President Trump. Mr. Smith was one of thousands who fell prey to the lies being told by Trump and his supporters in an effort to remain in power. He did not come intending to engage in violence, did not come prepared for violence, and did not participate in any violent acts. Even in the face of others acting violently, he did not join in their activity. He fully acknowledges that he was wrong to go into the Capitol and he regrets doing so. When he learned that there was an outstanding warrant, he turned himself in and voluntarily submitted to an interview with law enforcement, wherein he admitted he entered the capitol knowing he was not permitted to do so. Given the opportunity to plead guilty and to accept responsibility for his actions, he did so. He has since been on pretrial release with significant conditions for over a year.

    The government seeks a sentence of 36 months of probation and 90 days incarceration. This would be an illegal sentence, would be a sentence that would be disparate from similarly situated individuals, and would be a sentence that is significantly greater than necessary to fulfill

the purposes of sentencing. Instead, the Court should sentence Mr. Smith to a period of probation with appropriate conditions.

Mr. Smith is one of the youngest of the individuals who came to the District for the January 6 events. He was only 20 at the time and is now just 22 years old. He has a lot of obligations and responsibilities but has yet to develop the maturity he needs to meet those obligations. He is the father of a brand new baby. He and his fiancé and new baby are residing with her grandparents and he is working to support the three of them and attempting to save money to pay off his fines to clear his pending warrants. Mr. Smith is not a part of any organization or group that espouses violence or sought to overturn the election results. He has only a very minimal criminal history, primarily traffic offenses.  While he has had some difficulties complying with his pretrial release conditions, these struggles are also likely due to his age. As this Court is well aware, the brain of a 20 or 22 year old man is nowhere near fully developed. While this does not excuse his shortcomings, it provides an appropriate context within which to view them. Mr. Smith's age is a factor that the Court should consider.  "Immaturity at the time of the offense conduct is not an inconsequential consideration.  Recent studies on the development of the human brain conclude that human brain development may not become complete until the age of twenty-five . . ." *Gall v. United States*, 128 S.Ct. 586, 601 (2007).  Younger offenders like Mr. Smith have a "lack of maturity and an underdeveloped sense of responsibility" which "often result[s] in impetuous and ill-considered actions and decisions." *Johnson v. Texas*, 509 U.S. 350, 367, 113 S.Ct. 2658 (1993). They also are more vulnerable or susceptible to negative influences and outside pressures, especially peer pressure. *See Eddings v. Oklahoma*, 455 U.S. 104, 115, 102 S.Ct. 869 (1982) ("[Y]outh is more than a chronological fact. It is a time and condition of life when a person may be most susceptible to influence and to psychological damage").

In January 2021, Mr. Smith traveled on a bus with mostly older individuals to attend the Trump rally. He entered the Capitol but only for 10 minutes. He engaged in no violence, didn't encourage violence, and did not obstruct police. He recognizes that his mere presence made their jobs more difficult but he has taken responsibility for those actions. Thus, a sentence of probation would be appropriate in this case.

Congress requires federal courts to impose the least restrictive sentence necessary to accomplish the purposes of sentencing as set forth in 18 U.S.C. §3553(a). Those factors include (a) the nature and circumstances of the offense and history and characteristics of the defendant; (b) the kinds of sentences available; (c) the advisory guideline range; (d) the need to avoid unwanted sentencing disparities; (e) the need for restitution; and (f) the need for the sentence to reflect the following: the seriousness of the offense, promotion of respect for the law and just punishment for the offense, provision of adequate deterrence, protection of the public from future crimes and providing the defendant with needed educational and vocational training, medical care, or other correctional treatment. *See* 18 U.S.C. §3553(a).  In this case, a term of probation would meet all of the pertinent purposes of sentencing and would be appropriate given Mr. Smith's history and characteristics and his role in the offense.

Notably, Mr. Smith did not engage in any violence or destruction of property.  The government suggests that that lack of violence and destruction of property is not a mitigating factor in misdemeanor cases because, had this conduct been present, he would have been charged with felony offenses. However, this distinction is important because there have been misdemeanor cases where defendants did display assaultive and/or aggressive behavior. Without addressing all of the cases where sentences have been imposed, Counsel would point the Court to

a few examples: *United States v.Bradley Rukstales*, 21-CR-041 (CJN) (defendant sentenced to 30 days' incarceration after government alleged he threw a chair in the direction of police officers who had been forced to retreat and was ultimately dragged out of building after resisting their efforts); *United States v. Jacob Wiedrich*, 21-CR-581 (TFH) (two months' home detention imposed as defendant was young, did well on pre-trial supervision, and had no criminal history but shouted at police while entering building); *United States v. Jordan Hernandez*, 21-CR-272 (TJK) (court imposed two months' home detention despite Hernandez shouting at police and scaling wall to gain access to Capitol). Mr. Smith did not engage in this type of behavior and thus probation would be appropriate.

The purposes of sentencing include punishment, rehabilitation, general deterrence, specific deterrence, and incapacitation.  In this case, there is no need for incapacitation, specific deterrence or rehabilitation.  Mr. Smith's likelihood of recidivism is very low.  He has accepted responsibility for his actions and has engaged in no similar behavior. While he has had difficulties complying fully with his release conditions, he has incurred no new charges. The difficulties have been largely related to his immaturity and inability to focus on the need to stay in communication with his probation officer. While this may suggest he will have difficulty on supervision, it does not justify the lengthy period of incarceration sought by the government. Thus, the purposes of sentencing that seem most at play are general deterrence and punishment.

General deterrence has also been served in these cases by the collateral consequences that have damaged the lives and reputations of misdemeanants with the same charge in full view of the world. The rise of social media has made available the intimate details of every January 6 defendants' case with the touch of a button. The world is watching and has observed even the least culpable defendants be arrested, charged, and sentenced in public. There is no doubt that

general deterrence has been served for those who would be deterred.  Moreover, the public will be adequately deterred by the sentences meted out against those who perpetrated the violence and mayhem at the Capitol and the negative publicity and collateral consequences attendant to even a misdemeanor conviction for the others involved.  Those who would not be deterred by these consequences are likely not capable of being deterred.  A period of probation does constitute punishment as one's liberty interests are curtailed by travel restrictions, reporting obligations, and limitations on one's personal freedoms.

Mr. Smith did not destroy property, steal property, commit violent acts, or encourage others to do so.  He did not engage in pre-planning or coordination activities.  He brought no weapons or even defensive gear with him. While it is not appropriate to punish an individual for asserting their right to go to trial and to have the government held to its burden of proof, there is a societal benefit when people who have done wrong acknowledge that wrongdoing in a public way as Mr. Smith has done.  This has a deterrent effect on future wrongdoing and has a positive effect on others taking responsibility for their actions. It is also important to note that after his arrest in this case, Mr. Smith has taken no actions to suggest he would ever engage in this type of conduct again. He has not participated in rallies, has not continued to post about or espouse theories about the election being stolen, and has not engaged in criminal behavior.

On the issue of sentencing disparity, counsel appreciates that the government has attempted to set out meaningful distinctions in cases and some coherent rationale for the recommendations it makes.  However, those distinctions are not as clear as the government has suggested, and there is no scientific formula that will lead to sentencing uniformity.  In a District with as many judges as this District has, there can be no definitive sentence that addresses the unique facts and circumstances of each case.  Sentences imposed in these cases vary from very

short terms of probation to periods of incarceration, and everything in between. While Mr. Smith's conduct was serious, probation remains an appropriate resolution as it is well within the guidelines and would not result in disparity.  *See e.g., U.S. v. Jonathan Sanders*, 1-21-CR-384 (CJN) (36 months' probation); *United States v. Jackson Kostolsky*, 21-cr-197 (DLF) (36 months' probation with home confinement); *U.S. v. Jennifer Parks*, 1:21-CR-363 (CJN) (24 months' probation); *United States v. Julia Sizer*, 1-21-CR-621 (CRC) (12 months' probation); *United States v. Gary Edwards*, 1:21-CR-366 (JEB) (12 months' probation); *U.S. v. Jordan Hernandez*, 21-CR-272 (TJK), (24 months' probation); *United States v. Anna Morgan Lloyd*, 21-cr-164 (RCL) (probation imposed as requested by government); *United States v. Jessica and Joshua Bustle*, 21-Cr-238 (TFH) (probation with home confinement imposed with lesser terms of home confinement than requested by government); *United States v. Andrew Bennett*, Crim. No. 21-227 (JEB) (probation with home confinement imposed); *United States v. Danielle Doyle,* Crim. No. 21-00234 (TNM) (2 months probation with fine imposed); *United States v. Valerie Ehrke*, 21-cr-97 (PLF) (probation imposed as requested by government);  *United States v. Eliel Rosa*, Crim. No. 21-068 (TNM) (12 months probation); *United States v. Jacob Hiles*, Crim. No. 21-155 (ABJ)(2 years probation); *United States v. Sean Cordon*, Crim. No. 21-269 (TNM) (2 months probation); *United States v. John Wilkerson, IV*, Crim. No. 21-302 (CRC)(3 years probation); *United States v. Andrew Wigley*, Crim. No. 21-042 (ABJ)(18 months probation); *United States v. Andrew Hatley*, Crim. No. 21-098 (TFH) (3 years probation); *United States v. Rachael Pert*, Crim. No. 21-139 (TNM)(2 years probation); *United States v. Jeffrey Witcher*, Crim. No. 21-235 (RC)(12 months probation); *United States v. Brandon Nelson and Abram Markofski*, Crim. No. 21-344 (JDB) (2 years probation); *United States v. Thomas Vinson and Lori Vinson*, 21-CR-55 (RBW) (Probation with community service and fine); *United States v. Eliel Rosa*, 21-68 (TNM)

(12 months probation with community service); *United States v. Thomas Gallagher*, 21-Cr-41 (24 months probation).

Indeed, Counsel has reviewed a recent chart the government filed showing sentences to date in the January 6 cases, and since June 22, 2023, there have been 323 cases where defendants have been sentenced on the petty misdemeanor offenses under 40 USC 5104 as Mr. Smith will be. Of those 323 cases, 194 cases (nearly 2/3) received no term of incarceration. Of the 194 individuals who received no term of incarceration, 114 received straight probation or a fine, while 80 received a period of home detention. For the individuals who received no incarceration, the number of days of home detention ranged from zero days to 120 days, with the mode and median being zero days and the mean being 23 days of home detention. A sentence of incarceration is not warranted -- looking at all 323 cases sentenced under 40 USC 5104, the mode of days in custody is zero, the median is zero, and the mean is 14.5 days. This figure is of course skewed by sentences where individuals acted far worse than Mr. Smith.

Indeed, many individuals who arguably committed more serious misconduct received lesser sentences than what the government suggests is appropriate in this case. While there are many, a few of note include:

- Robert Lyon who, according to the government breached the Senate Parlimentarian's office and aided in the trashing of that office, stole items therein, lied about his presence at the capitol, and remained in the Capitol and on the grounds for hours, *U.S. v. Robert Lyon, 21-161 (RBW)* (pleaded guilty to theft of government property and disorderly and disruptive conduct in the capitol, sentenced to 40 days);
- Emily Hernandez who, according to the government entered the crypt and the Speaker's suite and stole items, remained in the Capitol for nearly an hour, and remained on Capitol grounds displaying trophies even longer, *U.S. v. Emily Hernandez*, 21-747 (JEB) (pleaded guilty to entering and remaining in the capitol, a class A misdemeanor, sentenced to 30 days);
- Derek Jancart who, according to the government came prepared for violence with a gas mask, returned to the Capitol after seeing the violence on TV, penetrated the Capitol to the Speakers Office and beyond, scaled the wall of the Capitol with a bike rack, remained

- in the building for 40 minutes and expressed no remorse, *U.S. v. Derek Jancart, 21-148 (JEB)* (pleaded guilty to disorderly conduct in the capitol, sentenced to 45 days);
- Jordan Stotts, who, according to the government scaled the wall of the Capitol, stood face to face yelling at the police, showed no remorse, and posted on Facebook saying he would be back, *U.S. v. Stotts, 21-272 (TJK)* (pleaded guilty to parading and picketing, sentenced to probation with home detention);
- Bradley Rukstales, who, according to the government threw a chair at officers, resisted arrest and had to be subdued and taken to the ground by multiple officers to be arrested, *U.S. v. Rukstales, 21-CR-41 (CJN)* (pleaded guilty to parading and picketing, sentenced to 20 days);
- Felipe Marquez, who, according to the government brought a firearm into the district but left it in his car, entered the private office of a Senator which was ransacked, interfered with the police while in the Capitol, *U.S. v. Marquez*, 21-cr-136 (RC) (pleaded guilty to parading and picketing, sentenced to probation with home detention);
- Anthony Mariotto, who, according to the government entered the Senate Gallery, videotaped assaults on officers, attempted to open closed doors, *United States v. Mariotto*, 21-94 (RBW) (pleaded guilty to parading and picketing, sentenced to probation);
- Gracyn Courtright, who, according to the government entered the Senate floor, attempted to steal a members only sign, *U.S. v. Courtright*, 21-CR-72(CRC) (pleaded guilty to class A misdemeanor, 30 days).

### **Incarceration Followed by a Period of Probation is Impermissible**

The government continues to request split sentences, noting that there are now other courts in this jurisdiction who have agreed that these types of sentences are permissible, including this Court.[1] The issue is now before the D.C. Circuit and we raise this objection to

---

[1] Many judges in this district confronted with the government's request for a split sentence for one single petty offense conviction have declined to impose such a sentence.  See *United States v. Spencer*, 21-CR-147 (CKK) (amending sentence after briefing provided), ECF No. 70; *United States v. Torrens*, No. 21-cr-204 (BAH), ECF No. 110 & 125); *United States v. Kari Kelley*, 21-CR-201 (DLF) (At sentencing on March 17, 2022, Judge Friedrich rejected the government's contention that a split sentence could be imposed even after being provided notice of the *Little* decision); *United States v. Jacob Wiedrich*, 21-CR-581 (TFH) (Judge Hogan also rejecting government's proposal for split sentence); *United States v. Vic Williams*, 21-CR-388 (RC) (court did not impose split sentence despite government's recommendation of split sentence); *United States v. Zachary Wilson*, 21-CR-578 (APM) (same); *United States v. Traci Sunstrum*, 21-CR-652 (CRC) (same); *United States v. Michael Carico*, 21-CR-696 (TJK) (same); *United States v. Tanner Sells*, 21-CR-549 (ABJ) (same).

preserve the issue for Mr. Smith. *See United States v. Little*, 22-3018 (originating docket No. 21-cr-315 (RCL)). We submit that a correct reading of the relevant statutes and the legislative history, make it clear that a district court has a dichotomous choice: it can either sentence the defendant to imprisonment up to six months, or it can sentence the defendant to probation for up to five years. Where, as here, there is solely one single petty offense, the statute precludes a combined probationary and a sentence of incarceration. Lastly, the government asserts that, at a minimum, the Court can impose intermittent confinement as a condition of probation. Again, we raise this issue to preserve it for appeal in light of the pending D.C. Circuit case. We contend that the Court does not have statutory authority to impose any sentence of imprisonment and probation for a petty offense regardless of what the incarceration is called. For a petty offense, it is unclear at what point an "interval of time" effectively becomes a "term of imprisonment" and therefore would constitute an unauthorized sentence of both imprisonment and probation. Cf. 18 U.S.C. §3583(d) (term of intermittent confinement pursuant to §3563(b)(10) may be imposed only for a *violation* of condition of supervised release).  A sentence of "intermittent confinement" as a condition of probation for a petty offense raises significant issues and potential constitutional issues.  *See United States v. Voda*, 994 F.2d 149, 151 n.2 (5th Cir. 1993) ("Voda expressly waived any argument that imposition of sixty days' confinement served over sixty day period is "imprisonment," as opposed to intermittent confinement, and thus a violation of section 3562"); *United States v. Baca*, 2011 WL 1045104 (C.D. Cal. March 18, 2011) supra at *2 (45 day condition of confinement violates statute).

## CONCLUSION

In the end, this Court is faced with the task of meting out a just and appropriate sentence given all of the factors involved, and Mr. Smith places his trust in this Court to do just that.

                              Respectfully submitted,

                              A.  J. KRAMER
                              FEDERAL PUBLIC DEFENDER

                              _____/s/_____
                              MICHELLE PETERSON
                              Chief Assistant Federal Public Defender
                              625 Indiana Avenue, N.W.
                              Suite 550
                              Washington, D.C. 20004

.